Thank you, Your Honor. My name is Eric Babcock. I represent Mr. Abpikar. So I don't run into any deficit argument, Your Honor. I would like to reserve, say, three minutes for a rebuttal argument. All right. Your yellow light will probably come on then when that three minutes is up, but of course we don't. Pardon? Two minutes. Then when that happens, then you're ready to go, but we're not constrained by that. If we've got a question going, we'll eat into that time as best we can. Fair enough. Go ahead. Thank you, Your Honors. This is an unusual case in a couple of respects because the essence of the charges against my client were that he lied to the government to get – and the odd thing is that when he was asked if he'd ever been arrested, he truthfully said yes. When he was asked if he'd ever been charged, he truthfully said yes. When he was asked if he'd ever been convicted, he honestly said yes. And then, in his wisdom, Customs and Immigration Services gave him about a one-inch space to fill in pertinent information. But the form tells him that if he needed more room to attach another piece of paper, right? It does. So he didn't do that, right? He did not. What it doesn't tell him is to list each and every arrest, charge and conviction. It doesn't actually say that. And I think the Court should remember that this is a naturalization form which is directed to people who are not natural citizens. I don't know the statistics, but presumably a large percentage of them are not. English is not their first language. But is there any indication in the record that that was the problem in your client's case? Well, the real problem, Your Honor, is that the immigration officer, Officer Geo, who processed more than 10,000 of these applications over the years and was doing somewhere between 12 and 15 a day, simply had no recollection of this interview at all. So can you back up first and answer the question that I asked about? Because I do think it's important, and I want to give you an opportunity to respond. But I could not see in the record any indication that English being a second language was the problem with your client failing to attach a second piece of paper. That's fair enough. And there is no evidence in the record of that, Your Honor. Officer Geo didn't testify to it because he didn't remember the interview. Right. And as you said, the record tells us that he performs lots and lots of these interviews, right? That's right. So my understanding, please correct me if I'm wrong. My understanding is that he didn't remember this one, unsurprisingly. That's right. And that he made an indication. There's some marks he made on the page. And so he testified about his usual practice. Is that fair? That's exactly true. He said, if you look at the form, the N-14, which starts in the excerpts at page 267, which is in the first volume, you'll see that there are, the form is mostly black and white, but there are some things in red, little check marks. And those check marks, where Officer Geo testified, were made by him when he went through this form during the interview with my client. And the things that he checked off are things that he went over with my client. And most importantly, and his whole testimony was based on that. It was based on his usual practice and reviewing this particular form to see what he checked and what he didn't check. And of particular interest and importance in this case is that the relevant questions here, for our purposes, are at page 274 of the excerpts. And those have to do with the prior criminal history. And Geo testified, you'll see that there are little red check marks next to questions 15 and 16. And then there are no more check marks, no red check marks next to questions 17, 18, 19, 20, 21, or in the summary that my client filled out of his criminal history in those three boxes. Because Officer Geo said, when I saw in question 16 that he said that he did have prior arrests, I went to his rap sheet. I went straight to the source. And I reviewed the rap sheet. So. So the fact that he didn't tell him wasn't that important? Well. I mean, we had two problems here. We have one where he fills out an application. And then we have a second where he goes in front of an officer. And again, under oath, he's asked some questions and he doesn't tell him again. Well, the problem is for the government, Your Honor, because Officer Geo doesn't say that he said, I saw that he answered yes to question 16, so I went straight to the rap sheet. He didn't remember and he didn't testify as to any follow-up questions he asked. He doesn't say what he asked him about his questions about the rap sheet. And the Oklahoma conviction and arrest and charge that the government made such a big deal about here, it was on the rap sheet. Well, counsel, before we get to the Oklahoma arrest and conviction, as of the day of the interview, would the rap sheet have shown the other arrest, the one that had taken place four days earlier? The short answer to that is I don't know, Your Honor. There was no testimony in the record about when that rap sheet was run, as it were, whether it was run the morning of the interview or at some earlier date. I couldn't find it either, but it seems to be yet another problem. If we're looking for full disclosure to follow up on Judge Smith's question, it seems to me that I don't have any indication from the paper record or from the testimony that that very recent arrest was reported anywhere on the rap sheet or otherwise. That's quite possible, Your Honor. All right. The problem is the whole gist of the government's case here is that my client was lying to them, but they haven't proved, apart from these specific questions on the form, they didn't prove what he was asked at the interview because the officer just didn't remember. Well, I guess my worry is you've got two problems with these issues. The first is it seems to me that I have to determine if there's sufficient evidence to support the conviction. That's the big part. So you're not in front of a jury making your best argument for how you want it to go. You have to look at what the government's evidence is and then say there's no sufficient evidence, which I hope you will make your arguments in support of. And then the second is that I'm on plain error review. I understand, Your Honor. And the plain error review makes it even tougher for you. And you seem like a great lawyer, but now here we are. Sufficiency of the evidence and plain error review. So if you discuss those two concepts in relation even to the argument you've made, that would be very helpful. Certainly. Taking the court's order as to the sufficiency of the evidence. What evidence did the government have? All they really have is the form. They have a form which was not filled out correctly as to the marriage, was not filled out correctly as to addresses, was not filled out fully, best we can say, as to his convictions. Right? That's all true. And then we have the officer who doesn't remember exactly what happens because he does too many of these, and he makes remarks on the form to suggest what he thinks, which is evidence may not be as strong as, oh, I remember that guy, and I know exactly what he did. But it does say this is what I denoted about what happened that day because I always denote it. Right? That's right. And so they have that evidence. Is that insufficient? That's the question. It is insufficient. Why? Because of these particular choices. On clear error review. Even on clear error review, Your Honor, on plain error review, which in sufficiency cases, I suggest that those two standards really conflate to nearly the same thing. Well, I know that others have argued that before me, and I expected that argument, but I just wanted to see how you were going to deal with it. Because it would be one thing if we had conflicting testimony about what happened at the interview. If the officer remembered it and he said X, Y, and Z, and my client remembered it and he said A, B, and C, and there was a dispute in the evidence, well, on plain error review, that would put me in a difficult position in front of Your Honors. But what we have is a very clear record. It's on paper. It's undisputed. And Officer Geo basically had nothing to add to that one way or another. So even on plain error review, the Court has a very adequate record to say that the evidence was insufficient because the charges in this case had to do with lying. They had to prove that my client lied. For every one of the all six charges, all three different statutes that were charged, they have to prove that my client willfully said something that was false. To the jury. Right? That's right. And the jury heard now the government's evidence, and what we're trying to suggest is, is it insufficient for the jury who's hearing your best argument, which you just gave, to suggest that this is conviction? Isn't that my question? It is insufficient, Your Honor, because as to counts 1 and 3, they didn't prove that he lied. They didn't prove that he said anything false. Which are 1 and 3? Those are the making a false statement to a government official under 18 U.S.C. 1001, Your Honor. And so lying by omission is not a lie? Is that your position? Doesn't it have to be? They have to prove that he said something false. Okay. And so is your position that by omitting information that he didn't utter a falsehood, is that your position? My position is that if what he said was literally true, undisputedly literally true, then that is not a violation, and that's what the Supreme Court has said. Okay. So what's the answer then regarding the address? I think there's testimony that he had never lived at the address where he claimed he lived. How is that true? I haven't argued the address, Your Honor, although I would note that really it's immaterial and they do have to prove materiality because when Officer Gia was asked whether the address was important and would have affected his decision, his response was just that it would have meant that my client would have had to apply to a different office. He gave a San Jose address, so he applied for naturalization through the San Jose office. The officer's response as to materiality was, well, if he wasn't living at that address, he would have had to apply somewhere else. And so what about the marriage? Your Honor. Is that immaterial? Officer Gio admitted that he had the green card in front of him, and the green card indicated on there my client had obtained his lawful permit. But the officer also said, did he not, that it's important because it says how one gets one's green card. He did say that, and he had that information in front of him, which, again, gets back to the materiality. The officer had the rap sheet with the relevant convictions, at least the old one. We don't know about the more recent one. And he had the information right in front of him about how my client got his lawful permanent residence status. So the fact that the officer knew he was lying, he could get away with lying? Is that what your argument is? No. My argument is if they're going to charge, denying him a green card on any of these things is a separate issue. My client was charged with six felonies, all based on his lying to this officer. They bring in an officer who doesn't remember what was said. So they haven't proven this. He didn't say, I asked him about the – I asked him about X, Y, and Z. He doesn't remember. All right. So what he testified to – I really want to invite you to correct me if I'm wrong. My understanding is this officer testified, here's the procedure I go through, and here's what these check marks, you know, mean. Not that he remembered that interview, but this is how I do it. Is that right? Exactly. Okay. And you don't think that's – you just basically don't think that's good enough? Is that what you're telling us? I don't think it's good enough in this particular case to prove these particular charges. He didn't ask all the questions that are on the form. And more particularly, because of the burglary arrest which happened between the signing of the form and the interview more than six months later. Right. There was no testimony that he asked any follow-up questions. What's happened in the last six to eight months? Has anything changed since you filled out this form last fall? So what do I do to distinguish U.S. v. White Eagle, which is very appropriate for me because it's a Ninth Circuit case where it says, where an individual is required to disclose certain information, the defendant's silence is akin to affirmative arrest representation and therefore logically falls within the scope of a prohibition on false or fraudulent statements. Well, I have a couple of responses to that, Your Honor, which is, one, that my client wasn't silent. He completely filled out this form. He filled in every space in this whole section on criminal history. And he did not attach an additional sheet. But that gets me back to, for a criminal prosecution, the government needs to be clearer on the question. If they're going to prosecute for perjury and false statement and providing false information to an executive department, they need to be clear, make clear what the question is. This is really elementary law school 101. If you answered yes to any of the questions 15 through 21, complete the following table. My client did that. If you need more space, use a separate sheet of paper to give the information. There are a variety of one simple sentence. Did he ever use any extra paper? No, he didn't. One simple sentence, and I note I'm running into extra time here, Your Honor. Yeah, you are. You can answer that question. One simple sentence inserted on this form by immigration would have cleared up all this, and I wouldn't even have an argument to stand on. What sentence? If you don't have space to list every arrest, charge, or conviction, use an extra sheet. And that's different from the sentence they had. It is. It doesn't say to do that. Okay. Thank you. It's implied, and certainly it's implied, but an implied question cannot support a perjury conviction. Thank you for your argument. Good morning. May it please the Court. My name is Lori Gray. I represent the United States. The record supports affirming each of defendants' convictions, and I'll start with the sufficiency challenge raised by defendants, specifically the interview. The jury convicted defendant on count four based on a 1001 violation and count six perjury for failing to disclose the May 15th, 2005 arrest at his naturalization hearing. Viewing the evidence in the light most favorable to the government and reasonable inferences, the record shows that the defendant was clearly guilty of these charges. But why isn't the multiplicity problem? We have visitors here today who are, I think, student interns. So maybe if you could explain that. The problem I have is that the form was filled out, and you all allege that it was filled out incompletely and that there were falsehoods by omission, right? There were falsehoods by omission and by commission, made false statements with regard to the marriage and the address. The address, right. And then at an interview, he was placed under oath, I think, and your contempt notice, that those falsehoods were repeated, the same falsehoods. So why is that not a problem with multiplicity? Sure, Your Honor. Because the two dates charged, one for the receipt of the application, the other for the interview, are two complete and distinct stages of the process, which makes this akin to this Court's decision in Selles-Camacho, where two separate denials to two separate immigration officers at the border were not multiplicious. And the reason is that there's a weaning process that goes on. And Geo testified to that when he was asked, well, what would knock someone out of immigration? And he says, well, one thing is that the address isn't within the three-month period. So if someone, if this application comes in, Your Honor, and they look at it and they say, oh, gosh, this guy just got here a month ago, not going to get to the interview stage. Different stage. There are certain crimes. He was asked, well, what if the defendant had put on the 1979 bomb threat charge? Would he have been ineligible? And Inspector Geo testified, well, that would go to our enforcement group because there are certain crimes that are deportable. Right. But I understand that. But the cases go both ways, though, on facts that seem to be razor thin to me. And I'm troubled by the notion that the defendant's conduct, the culpability of his conduct is a function of how many different processes the government has or how many different officers have to look at a particular form depending on the apparatus that the government sets up. Why should that change the culpability of the defendant's conduct? Well, because it is, as I said, it's a win-win. It's like a job interview. You send in your resume, and then when you go on your resume is what it is and you go in for the interview, that's a different step in the process. Well, that's because the government set it up that way. But if the defendant has lied, I'm talking about a hypothetical defendant. Sure. Let's say it's a lie. Sure. And for my hypothetical, there isn't any question about that. And then he repeats that lie. There are other cases, of course, where repeating the same lie, even on different days, but to this same police officer, those cases were held to not satisfy block. I understand. And this one doesn't. Well, with regard to the elements, I think we get over that hurdle, because each of these charges had a different element that the others don't. So with regard to that prong of multiplicity, Your Honor, I think it's very clear. For example, Section 1015 and 1621 require that the defendant be under oath, whereas Section 1001 doesn't. Section 1001 and 1621 require that the statement be material. Section 1015 doesn't. Section 1015 and 1001 require that the statement be made to the government. Section 1621 doesn't. So that prong, we satisfy the block – the Blockberger test in that there is a different element required for each offense. And the defendant's complaint with regard to multiplicity on that issue is taking care of its sentencing, because counts that arise out of the same transaction are grouped, and they were here. And the government doesn't know how the jury is going to view the case. So where there are facts that support each of these separate counts, it is a – it is totally improper to charge those, because the jury may not find on every – in this case, as you can see on the verdict form, the jury did not convict on each and every subpart. So that prong of multiplicity, I think, is well proven in the record. Your question, if I follow, Your Honor, goes to the second prong, which is, well, is it a disparate and distinct step? And in the process – and I'm saying, yes, in fact it is. It's not the case, also, which defendant relies on, where a Secret Service agent asked the same questions on two different dates, and the result was different. In this case, if defendant makes a false statement on his application, and it's reviewed and found that that is something that kicks it out, we don't get to the next stage in the process, in the interview stage. So that's how you know that it's two separate and distinct. And the other thing you can't tell from the cold record, I could have flown in last night from China, be an immigrant, and asked one of you guys to fill out my form. You fill it out perfectly. I then get to the interview process, and Geo testifies that one of the first things he has to do is assess English, and he asks me a bunch of questions, and it's clear I don't speak the language. That's a different part of the process. He's got a different thing that he's evaluating. So that's why, in this case, it isn't multiplicious. It's much more, as I said, to those court cases that show that in a different State, in the process, it's a different impairment, because while the goal is naturalization, you can get knocked out if your application isn't correct. You can get knocked out at the interview if there's something. There's post-interview proceedings. All of that are simple, are separate and distinct and important material parts of the process, and that's why I believe, Your Honor, that the materiality issue, the Court can affirm on that. If you've adequately discussed with my colleague her question, I would like you to discuss the analysis by your opponent that suggests that we really don't have much to look at except as it relates to the criminal convictions, that really the marriage is immaterial, they had the green card sitting in front of them, and the fact that he won't tell where he had on an address is immaterial as well. Your Honor, looking at the counts of which defendant was convicted, on the interview counts, specifically convicted on 1001 and perjury for failing to disclose their arrest four days earlier. That's the conviction. We're focusing on that. And I want to make clear to the Court, there was more. Defendants said several times, all we have is the sheet of paper. No, we have much more than that. Geo testified at trial about his normal pattern and practice. And what he testified to, he does 11,000 of these things a year, he testified that his normal pattern of practice is the first thing that he does is he administers an oath to tell the truth. That is done in every case so that what he is getting is truthful information. He then reviews each page of the application, starting with the first, going to the last. He marks any changes or notations in Reddick, and you can see that in the excerpt of record. And he relies on the applicant to be truthful. This isn't hide and seek. The defendant is asked questions and he's informed. And in this particular case, I agree with the defense counsel on one thing. The record doesn't show that the defendant was specifically asked, has anything happened since the time you submitted your form to today? But the defendant clearly saw, as evidenced by the checkmarks when Geo went through the form, that there were changes made. For example, Geo. You've left my question a little bit. My question was, what is the relevance of the marriage, failure to suggest the marriage, or the failure to give the address? Is there anything really we can take from that, or should we focus, as you now have in answering that first question, on the other criminal evidence? Well, Your Honor, the jury did find the defendant guilty of that. The defendant doesn't appeal those counts, doesn't appeal the marriage, doesn't appeal the address. And the jury certainly could have, in hearing that, if this is a guy that lies on his marriage and lies about his address, the reasonable inference, based on Geo's testimony, is that he lied about his criminal history. Because the form shows that Geo checked question 16. He asked him specifically, have you ever been arrested, cited, or detained by any law enforcement officer for any reason? Now, Geo has already got information from the defendant to augment this form as far as the defendant's selective service number and the date. So the defendant sees he's updating the form, and that information came from defendant. Then significant is the last part of this form, at excerpt of record 274, or, excuse me, at excerpt of record 276. It says in big letters, do not complete part 13 and 14 until an INS officer instructs you to do so. And that's the signature at interview. And that signature says, I swear, affirm, and certify under penalty of perjury that the laws of the United States of America that I know the contents of this application for naturalization subscribed by me, including corrections, are true and correct to the best of my knowledge and belief. And clearly, defendant did not know it was true and correct to the best of his knowledge and belief, because he'd been arrested four days earlier and didn't reveal that. And Geo testifies to the importance of that signature at the interview. At excerpt of record 523, he is asked, Geo is asked, let's move on to section 13. Describe for the jury what section 13 is. And Geo says, a section to affirm that he, the defendant, went over this application under penalty of perjury. The information that he's provided to me is correct and truthful. And it's signed the date of that interview. That, a reasonable jury could have found from that, based on the government's evidence, that the defendant was guilty of these charges. The one thing is, that's just the government's case. But because defendant didn't make a motion, you can consider the evidence in the entire case. And contrary to what defense counsel said, there was a direct clash of what the evidence was. At excerpt of record 519, Geo is asked, did the defendant, during your interview, indicate that he had been arrested on May 14th, 2005, by San Jose police for burglary, receiving stolen property, and theft of personal property? Geo answers, no. Defendant testifies. Excerpt of record 404, the case in Westfield Mall, the arrest, May 14th of 2005, four days before your interview. Did you speak with Mr. Geo about that? Yes. Did you bring it up to him? Yes. Ladies and gentlemen, the jury was proper. Excuse me. I think I'm in front of the jury. The court properly charged the jury that they alone decide the issues of credibility and they decide who and what to believe. They were presented with that, and their verdict clearly shows that they did not believe the defendant. That's with regard to the interview charges. Now, with regard to the application charges, and this, Judge Smith, may go more directly to your question with regard to the criminal history of the Oklahoma bomb threat case. That goes to count one and count three, which, again, count one is the 1001 violation, and count three is the perjury. The 1621 violation, correct? Correct, Your Honor. And at trial, the evidence proved beyond a reasonable doubt that the defendant was charged with making a bomb threat, that he did not name it on the application. And the plain language of that application makes clear that once you've answered yes, please fill in the box below. But if you need more space, use a separate sheet of paper. And he didn't need and he didn't use a separate sheet of paper. And at trial, his defense was, well, my defense, my roommate at the time told me it was gone. But again, under good moral character, just before number 16, it says you must answer yes, even if your records were sealed or otherwise cleared or if anyone, including a judge, law enforcement officer or attorney, told you that you no longer had a record. So that takes care of his trial defense. On appeal, he's now come up with a literally true defense, but the form itself rebuts that by saying if you need more space, use a separate sheet of paper. And as the Court characterized defendant's conduct at sentencing, he was manipulative. The defendant came into this country in 1979. He testified. He was fluent in English. He's got multiple advanced degrees in chemistry. He's a bright guy. So to argue that he is confused or didn't understand is completely disingenuous on the facts of this case. Defendant raises several points. Well, I'm not sure that was the argument. I think the argument is, is the form sufficiently clear? Because even counsel suggested that he – there's nothing in the record to suggest he couldn't speak English or didn't understand English. And just to close the loop on this, with regard to complete the following, if you need more space, viewing the evidence in the light was favorable and reasonable inference. The inference from that is if you need more space because you have a larger criminal history, you're not done filling in the box. Defendant raises another – a number of other issues that I won't address unless the Court has questions. But I would like to touch briefly on the IAC claim, because in getting ready for argument, I realized that the Court can review that on direct appeal and deny it, because whereas here sufficient evidence supports the charges, it doesn't matter that he didn't make the motion, because he cannot prove prejudice and he hasn't argued prejudice. The IAC – it's his burden to show that the Court would have granted that motion. I think the record shows it would not. And indeed, as I said at sentencing, the Court sentenced upward and called the defendant's conduct manipulative. If there are any other questions on the other issues, I'm happy to answer them. Otherwise, I would submit on the brief. Thank you. Thank you. I think you have some more. Oh, no. We took you past. I'll give you 30 seconds. I think we have enough time, Your Honor. I'll give you 30 seconds. Thank you, Your Honor. Just to sum up here. I would just sum up. On the multiplicity, to suggest that it's immaterial because the Court took it into account at sentencing, I know my client would disagree with that. Standing convicted of six felonies as opposed to something less than that is a significant difference, and it also affected the amount of the special assessment. It was $600 instead of something less. As to considering my client's testimony, that's another variation. I guess I didn't articulate it in the brief, but another example of the ineffective assistance of counsel my client received. There should have been a Rule 79 made here, at least to protect the appellate record as to the sufficiency claims, even if counsel believed in his own mind that they were sufficient, which I clearly do not agree with that assessment, assuming that that assessment was even made, which I have doubts about because my client received some very poor representation here. Thank you for your argument, Counselor. Thank you, Your Honor. Thank you very much for both of you coming and for your good argument to help us determine this very important case. This is Case 11-10192, USA v. Abacar, now submitted.
judges: FERNANDEZ, SMITH, CHRISTEN